## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AHMED AL-JALHAM,

     *Plaintiff*,

                            CASE NO. 15-11991

                            DISTRICT JUDGE VICTORIA A. ROBERTS

*v.*                        MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
(Docs. 11, 14)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Al-Jalham's Motion for Summary Judgment (Doc. 11) be **DENIED** and that the Commissioner's Motion for Summary Judgment (Doc. 14) be **GRANTED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. §§ 401-34 and Supplemental Security Income ("SSI"). (Doc. 3.) The matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 14.)

On September 10, 2012, Plaintiff filed the present claim for SSI and DIB, alleging that he became disabled on May 27, 2012. (Tr. 175-83.) Plaintiff's initial claim was denied, (Tr. 89-115,) and Plaintiff requested a hearing. (Tr. 116-17.) On November 21, 2013, Plaintiff appeared before Administrative Law Judge ("ALJ") Denise McDuffie Martin, who considered the application for benefits *de novo*. (Tr. 50-88.) The ALJ found that Plaintiff was not disabled on February 6, 2014. (Tr. 29-45.) The ALJ's decision became the Commissioner's final decision on, April 21, 2015, when after review of additional exhibits,[1] (Tr. 5.) the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

On June 2, 2015, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Pl. Compl., Doc. 1.) Plaintiff filed a motion for summary judgment and supporting brief on November 9, 2015. (Doc. 11.) Defendant filed a cross motion for summary judgment on February 11, 2016. (Doc. 14.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), these motions are ready for report and recommendation without oral argument.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

### B.      Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Id.* (internal citations omitted).

### C.      Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not
less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The

Commissioner's regulations provide that disability is to be determined through the application

of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity,
benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of
impairments that "significantly limits . . . physical or mental ability to do basic
work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a
severe impairment that is expected to last for at least twelve months, and the
severe impairment meets or equals one of the impairments listed in the
regulations, the claimant is conclusively presumed to be disabled regardless of
age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits
are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work,
if other work exists in the national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534

(6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and

severity of limitations caused by her impairments and the fact that she is precluded from

performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir.

2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). The burden

transfers to the Commissioner if the analysis reaches the fifth step without a finding that the

claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At

the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

Following the five step analysis, the ALJ found that Plaintiff was not disabled under the Act. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since the alleged onset date, May 27, 2012. (Tr. 34.) At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar spine disc disease and anterolisthesis; left shoulder degenerative joint disease; carpal tunnel syndrome; hypothyroidism; a hepatitis C infection; diabetes mellitus; and allergies." (Tr. 34-35.) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. 35.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work "with the use of a cane for ambulation and balance. He could not operate foot or leg controls with either lower extremity. He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but he could not climb ladders, ramps, or stairs. He should avoid concentrated exposure to pulmonary irritants, such as dust and fumes. He should avoid all exposure to unprotected heights and dangerous moving machinery." (Tr. 36.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 43.) At step five, the ALJ found that a significant number of jobs existed which Plaintiff could perform despite his limitations. (*Id.*) The ALJ also found that Plaintiff was forty-five and therefore a younger

5

individual (ages 18-49) as of the alleged onset date. (*Id.*) As a result, the ALJ found Plaintiff is not disabled under the Act. (Tr. 45.)

### E.    Administrative Record

#### 1.    Medical Records

Plaintiff identifies the following as primary problems: "severe back pain, asthma, allergies, diabetes, carpal tunnel syndrome, degenerative joint disease, and hypothyroidism, among other problems." (Doc. 11, at 3.) Plaintiff's treatment for Hepatitis C, allergies, sleep apnea, abdominal issues, and hyperthyroidism are not placed at issue in this appeal. Thus I will limit my discussion of the medical records accordingly. I do note that in 2012 Plaintiff was prescribed the following medications for his allergies: Singulair, Astelin, and Nasonex. (Tr. 292, 269-70.) Plaintiff was also given a turbinate injection and immunotherapy was recommended. (Tr. 295.)

From April 2011 through January 2013, Plaintiff was treated by Ali Nasser, M.D., P.C. (249-68, 274-290, 316-32.) In 2011, Dr. Nasser diagnosed Plaintiff with chronic hypothyroidism, GERD, and hypertension. (Tr. 250-52.) In September 2011, and January and May 2012, Plaintiff was treated for epigastric abdominal pain, headaches, allergic conjunctivitis, and bronchitis. (Tr. 249-50, 286-89.) Plaintiff was prescribed medication for the abdominal pain, hypertension, and hyperthyroidism. (*See, e.g.*, 249-50, 279-80, 286, 288). It was repeatedly noted that "[o]n examination the patient is alert and oriented x3." (Tr. 250-52, 287-89.) A physical exam, on June 30, 2012, was normal. (Tr. 283-84.) On August 27, September 6, and September 11, 2012, Dr. Nasser treated Plaintiff for lower back pain that radiates into his left leg. (Tr. 276-78.) Dr. Nasser noted that Plaintiff walks with difficulty, has

a possible herniated disc, has a positive straight leg raising test, and has been taking Vicodin. (Tr. 276-77.)

On September 11, 2012, Dr. Nasser completed a claim statement for Short Term Disability Income Benefits. (Tr. 254-55.) Dr. Nasser diagnosed Plaintiff with back pain and radiculopathy which onset on August 27, 2012. (Tr. 254.) He opined that Plaintiff has "severe limitation of functional capacity [and is] incapable of minimal (sedentary) activity." (Tr. 255.) He also opined that Plaintiff suffers from a major psychiatric impairment "in several areas – work, family, relations. Avoidant behavior, neglects family, is unable to work." (*Id.*) Dr. Nasser noted that Plaintiff has issues sleeping because of pain and cannot ambulate freely. (*Id.*) He stated that diagnostic test results were not yet available. (*Id.*) That same day, Dr. Nasser opined that Plaintiff could not return to work. (Tr. 256.)

Nilesh Patel, M.D., an orthopedic specialist, treated Plaintiff on September 21, 2012, for "lower back pain with pain, numbness, and tingling that radiates down the back of the left leg to his foot." (Tr. 308.) Plaintiff reported "10/10" pain in his back and leg, that he can stand fifteen to twenty minutes, walk thirty feet, and that he takes Vicodin and Motrin. (*Id.*) Examination revealed antalgic gait, "normal lumbar lordosis and balances sagittal and coronal," tenderness to palpation of the paraspinous, normal reflexes, intact sensory function, and full strength in all areas except the left ankle. (Tr. 310-12.) X-rays revealed disc space narrowing and spondylosis at L5-S1 and listhesis at "L4-5 grade one dynamic 6mm with flexion, 3 mm with neutral." (Tr. 312.) Dr. Patel's impression was back pain, with left lumbar radiculopathy; he prescribed Naproxen and Medrol. (Tr. 312.) He noted, "Off work until next visit," and referred Plaintiff to Dr. Rehman for non-operative care and an EMG. (*Id.*) A

September 2012 MRI revealed "[g]rade 1 anterolisthesis L4 on L5;" "[p]ossible left L4 unilateral pars defect;" "[m]ultilevel degenerative spondylosis, predominately at L4-5," and [f]atty filum terminale." (Tr. 307, 309.) On October 5 and November 30, 2012, Dr. Patel diagnosed plaintiff with back pain, left lumbar radiculopathy, lumbar spondylolisthesis, and lumbar stenosis. (Tr. 305, 363.) Plaintiff underwent physical therapy treatment twice in October 2012. (Tr. 297.) On November 30, 2012, Dr. Patel indicated that plaintiff has experienced some improvement with physical therapy, epidurals, anti-inflammatory drugs, and a brace. (Tr. 362.) Plaintiff reported that he had two epidural steroid injections with Dr. Rahman that lasted approximately one week. (*Id.*) A review of plaintiff's systems was normal indicating no chest pains, shortness of breath, cough, headache, dizziness, abdominal pain, fatigue, or generalized joint pain. (*Id.*) Physical examination revealed normal gait and intact sensation of L2-S1, except the dorsum of left foot is decreased. (*Id.*) It was noted that "if pain gets worse and patient wants surgery that would include L4-5 lami fusion." (Tr. 363.)

On December 6, 2012, Plaintiff saw Bassam Maaz, M.D., a neurologist, for complaints of dizziness and memory issues. (Tr. 321.) A physical examination was normal, revealing no numbness, tingling, or weakness in any extremities; no joint pain, redness or swelling; no back pain; or headaches, swelling, or injuries; clear lungs; and no edema. (*Id.*) Plaintiff had normal strength; intact sensation, except for a "pin prick on left median side;" intact coordination; and normal gait. (Tr. 322.) Heel, toe, and tandem walking were performed without difficulty, and a Romberg test was negative. (Tr. 322-23.) A neurological exam revealed that Plaintiff was oriented to person, place, and time; had clear speech; had no evidence of dysarthria or dysphasia; had intact memory to immediate, recent, and remote events; intact naming,

8

calculation, and subtraction thought processes, and no overall deficits. (Tr. 322.) Dr. Maaz noted concern over central versus peripheral dizziness, forgetfulness and depression versus organic brain syndrome, and possible carpal tunnel syndrome. (Tr. 323.) He recommended a brain MRI, ENG testing for dizziness, a psychiatry consultation, an EMG/NCS of the upper extremity, and a blood test. (*Id.*) The EMG/NCS revealed mild carpal tunnel syndrome, for which Dr. Maaz prescribed anti-inflammatory medication and a wrist brace. (Tr. 319-20.)

In December 2012, Plaintiff continued to seek treatment for lower back pain and radiculopathy from Dr. Nasser. (Tr. 330.) On January 3, 2013, Plaintiff reported that Naproxyn did not help with his pain and that he "lifts heavy machinery at work in a steel plant." (Tr. 328.) Examination results were normal except for tenderness upon deep palpation of the lumbosacral spine. (*Id.*) Dr. Nasser advised Plaintiff to continue Naproxyn and to take Vicodin. (*Id.*) Plaintiff continued to complain of back pain throughout January; examinations on January 19 and 24, 2013, revealed decreased range of motion and lumbosacral tenderness. (Tr. 327, 316.) Dr. Nasser diagnosed Plaintiff with diabetes later that month. (Tr. 325-26.) He started Plaintiff on Metformin and Glucotrol. (Tr. 316.) Plaintiff complained of fatigue and anxiety over the diabetes; no chest pain or shortness of breath was reported. (*Id.*) The following medications were listed: Glucophage, Glucotrol, Levsin, Phenergan with Dextromethorphan, Prilosec, Robaxin, and Synthroid. (*Id.*) Plaintiff was assessed with fatigue, uncontrolled diabetes, hypothyroidism, hypertension, and back pain. (*Id.*)

On December 12, 2012, Plaintiff was treated for complaints of sharp left shoulder pain that radiates into the left hand and lower back pain that radiates to lower extremities with numbness by Hassan Hammoud, M.D., an orthopedic surgeon. (Tr. 352-54.) Plaintiff did not

9

use an assistive device to ambulate, but was limping and could not walk on his heels or toes. (Tr. 352.) A physical exam of the lower back revealed moderate tenderness, moderate muscle spasm, moderate rigidity, trigger point present, no gross deformities, fifty percent normal range of motion, no atrophy of the bilateral leg, normal reflexes, three out of five muscle strength of his lower extremities, intact sensation, and a positive bilateral straight leg test, "which may indicate low back radiculopathy or possibly a lumbar disk lesion." (Tr. 352-53.) Examination of the left shoulder revealed no swelling, effusion, hyperemia, or irritation; moderate tenderness; no gross deformities; seventy present normal range of motion; no atrophy; normal reflexes, intact sensation, and three out of five upper extremity muscle strength. (Tr. 352.) X-rays of the left shoulder revealed mild degenerative joint disease. (*Id.*) Plaintiff was diagnosed with a lumbar sprain/strain, lumbar neuritis/radicul, and shoulder arthritis. (*Id.*) Dr. Hammoud prescribed Celebrex, Robaxin, and Ultram and recommended physical therapy. (Tr. 353-54.)

During a follow up with Dr. Hammoud on February 18, 2013, Plaintiff reported pain radiating into his left and right leg that is relieved with pain medication and physical therapy. (Tr. 355.) Plaintiff was no longer limping but could still not walk on his heels or toes. (*Id.*) Plaintiff was diagnosed with lumbar spine disc bulging and lumbar osteoarthritis. (*Id.*)

On March 5, 2013, Plaintiff was examined by state consultant Cynthia Shelby-Lane, M.D. (Tr. 333-50.) Plaintiff reported back pain treated by injections and physical therapy; he stated that he was not interested in having recommended surgery. (Tr. 333.) He also reported asthma and a history of allergies and thyroid issues. (*Id.*) Plaintiff reported the following medications: Vicodin, Robaxin, Methylprednisolone, Glucotrol, Ultram, Levothyroxine, Nasonex, and Ventolin. (Tr. 334.) Dr. Shelby-Lane observed that Plaintiff was alert and

10

oriented x3; had "[t]enderness to palpation in the lower lumbar area;" and "no calf tenderness, clubbing, edema, varicose veins, brawny erythema, stasis dermatitis, chronic leg ulcers, [] muscle atrophy or joint deformity or enlargement." (Tr. 334-35.) Plaintiff wore a back brace to the exam and had a cane. (Tr. 335.) Dr. Shelby-Lane noted that Plaintiff could get on and off the table slowly; tandem, heel, and toe walk slowly; squat and bend seventy percent; and had normal straight leg raising tests. (*Id.*) No abnormalities were noted in the cranial nerves; sensation was intact; a motor exam revealed "fair muscle tone without evidence of flaccidity, spasticity or paralysis;" and Plaintiff had normal range of motion in all areas except flexion of the lumbar spine. (Tr. 335, 340-41.) Dr. Shelby-Lane's impression was chronic back pain, asthma, history of allergies, and hypothyroidism. (Tr. 335.) She opined that "[b]ased upon the history and exam, the examinee has multiple medical problems for which he will need long-term ongoing care. He may have difficulty with repetitive and heavy bending, pushing, pulling and lifting." (*Id.*) An examination of the lumbar spine, on March 5, 2013, by Benson Selitsky, D.O. revealed slight anterior spurring. (Tr. 339.)

Dr. Shelby-Lane completed a functional assessment on March 7, 2013. (Tr. 344-49.) She opined that Plaintiff could occasionally lift and carry up to twenty pounds; sit two hours and stand/walk for one hour without interruption; sit four to seven hours, stand three to five hours, and walk three to five hours in an eight hour workday; ambulate for one hour without the use of a cane; frequently reach, handle, finger, feel, push and pull bilaterally; occasionally use his feet to operate foot controls; occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, but never climb scaffolds or ladders. (Tr. 344-49.) She noted that the use of a cane is medically necessary. (Tr. 345.)

11

### 2.      Function Report

On October 23, 2012, Plaintiff completed a function report. (Tr. 216-23.) Plaintiff reported that he "can't do even simple things sometimes due to the pain" and depression. (Tr. 216.) He needs assistance from his wife to complete personal care tasks and does not prepare meals, complete house and yardwork, go shopping, or manage money and bills. (Tr. 217-19.) His wife usually drives and he "likes to sit alone in bedroom laying down or in basement without noise away from people. (sic)" (Tr. 219-20.) He does not handle stress or change in his routine well and has issues following spoken instructions because of concentration. (Tr. 221-22.)

### 3.      Hearing Testimony

At the hearing on November 21, 2013, Plaintiff testified, with the assistance of an interpreter, in relevant part, that he lives with his wife and four children (ages 14, 13, 12 & 2). (Tr. 54.) He testified that he has a lower back pain that radiates into his left leg and foot, and he always uses a cane because it helps with the pain. (Tr. 657-59.) He testified that he was supposed to have back surgery but it was canceled due to lack of insurance. (Tr. 60.) He takes Vicodin and Naproxen for his back pain, which helps with the pain but makes him sleepy and causes him to lie down for two to three hours twice a week. (Tr. 61-62.) He testified that he gets dizzy and has difficulty seeing for approximately twenty-five minutes twice a month when he takes his shot and his medicine. (Tr. 62.) He also testified that he has sleep apnea, which has been causing him to frequently fall asleep. (Tr. 66.) He testified that can lift about ten to fifteen pounds, walk one to two blocks on a good day, and stand with his cane for about two hours on a good day and forty minutes on a bad day. (Tr. 68-69.) All he does during the day is watch

television, go on Facebook, and drive two times per week. (Tr. 69, 71.) He can bathe and dress himself. (Tr. 70-71.)

A medical expert, William Charles Houser, M.D., also testified at the hearing. After briefly reviewing the evidence, (Tr. 73-75,) Dr. Houser opined that Plaintiff does not meet or equal a listing. (Tr. 75.) He testified that he agrees "in general" with the assessment by Dr. Shelby-Lane that Plaintiff could perform light work. (*Id.*)

## F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, but the only relevant distinction for present purposes is between "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the

statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse*, 502 F.3d at 540-42; SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's residual functional capacity ("RFC"), and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner*, 375 F.3d at 390.

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of

15

the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)    Treatment, other than medication, . . . received for relief of . . . pain;

(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Plaintiff contends that substantial evidence does not support the ALJ's RFC assessment because she erred by (1) failing to consider the side-effects of Plaintiff's medication; (2) failing to consider Plaintiff's multiple impairments in combination; (3) failing to accord adequate weight to the opinion of Plaintiff's treating physician; and (4) failing to assign appropriate weight to Plaintiff's testimony. I will address each of these arguments in turn.

#### 1.    Side Effects of Plaintiff's Medication

Plaintiff argues that the ALJ erred by dismissing Plaintiff's testimony that "he lies down four to five times a day because of medication side-effects and stress." (Doc. 11, at 8.) Plaintiff

17

references Social Security Regulation (SSR) 96-7p, 1996 SSR LEXIS 4, at *8, which requires the ALJ to consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." (Doc. 11, at 8.) Plaintiff also argues that under SSR 96-8p, 1996 SSR LEXIS 5, at *13-14, the RFC assessment "must be based on all of the relevant evidence in the case record," including the "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g. frequency of treatment, duration, disruption to routine, side effects of medication) . . . ." (Doc. 11, at 8.) Plaintiff then states that "the medical documentation supports his medication side-effects [and] [t]here is substantial evidence to support his need to lie down because of medication side-effects and stress." (*Id.*)

Defendant argues that Plaintiff does not accurately characterize the ALJ's decision, pointing out that the ALJ "explicitly and repeatedly addressed Plaintiff's alleged side effects in general and his alleged drowsiness in particular." (Doc. 14, at 10.) Defendant also points out that Plaintiff's assertions are unsupported by citation to the medical record and that Plaintiff makes no attempt to demonstrate that the alleged drowsiness rendered him disabled under the Act. (Doc. 14, at 11.)

The ALJ did specifically address Plaintiff's alleged side effects stating. "I considered . . . the effectiveness and side effects of prescribed medication. . . . These factors do not show that the claimant was more limited than determined when formulating the residual functional capacity." (Tr. 41.) He also specifically considered Plaintiff's testimony:

> [Plaintiff] testified that his medications made him sleepy, but the medical records do not corroborate his testimony of medication side effects. The medical records do not show that he made ongoing reports of sleepiness as a side effect of

medication. The [Plaintiff] had no emergency department visits or hospitalizations since the alleged onset date. He had no EMI/EMS treatment for pain that he reported as debilitating. . . . The [Plaintiff's] treatment history, use of and response to medication, and utilization of other measures to treat pain and other symptoms does not demonstrate the imposition of additional limitations than those set forth in the residual functional capacity.

(Tr. 41.) Thus I suggest that the ALJ did not err on this ground.

### 2.    Plaintiff's multiple impairments in combination

Plaintiff alleges that the ALJ erred by failing to consider how Plaintiff's "multiple impairments would act *together* to effect his ability to hold substantial gainful employment." (Doc. 11, at 10.) Plaintiff cites *Dorton v. Heckler*, 789 F.2d 363, 366 (1986) for the proposition that "an impairment or combination of impairments will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings as shown in the medical evidence are at least equal in severity and duration to the listed impairments most like the claimed impairment." (Doc. 11, at 9.) He also cites SSR 96-8p, which states that an RFC "must be based on all of the relevant evidence in the case record," including "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g. frequency of treatment, duration, disruption to routine, side effects of medication.)" (Doc. 11, at 10.)

However, as Defendant points out, Plaintiff has once again mischaracterized the ALJ's decision because the ALJ explicitly addresses Plaintiff's combination of impairments throughout her decision. For instance, at step two the ALJ found, "The medical evidence of record fails to establish the requisite criteria necessary to meet or equal any one of the listings enumerated in (20 CRF, Subpart P, Appendix 1) (the Listings), whether considered singly or in combination." (Tr. 35.) The ALJ also noted in his RFC assessment that "The medical records .

19

. . . show that the combination of these impairments caused [Plaintiff] to experience some difficulty with lifting and carrying objects, with standing, and with walking. However, these medical records do not show that the [Plaintiff's] symptoms and these findings limited [Plaintiff] to the extent that he could not perform any work activity." (Tr. 40.) Thus I suggest that the ALJ did not err by failing to address Plaintiff's impairments in combination.

Plaintiff next alleges that the ALJ failed to consider Dr. Maaz's report which noted concern about central versus peripheral dizziness, forgetfulness, and depression. (Doc. 11, at 10.) However, the ALJ specifically discussed this report in his review of Plaintiff's medical records, (Tr. 40,) and Plaintiff does not raise any argument that the ALJ inadequately analyzed the report or failed to incorporate it into the RFC. Thus I suggest that the ALJ did not err.

Along the same vein, Plaintiff asserts that the ALJ failed to account for Dr. Nasser's and Dr. Patel's findings of decreased range of motion of the lumbar spine and an MRI indicating grade 1 anterolisthesis of L4/L5 as well as multi-level spondylolistheses. (Doc. 11, at 10.) Again, the ALJ discussed these findings in his review of the medical records. (Tr. 37.) Additionally, the ALJ specifically analyzed these findings and concluded that "Dr. Nasser's office visit findings . . . Dr. Patel's findings, the MRI, EMG, and spirometry findings, and Dr. Hammoud's findings . . . support restricting [Plaintiff] to light work." (Tr. 42.) Plaintiff does not explain how the ALJ erred in analyzing these records or incorporating them into his RFC assessment. Thus I find that the ALJ did not err on this ground either.

Plaintiff briefly states that the ALJ erred in applying 96-7p because she did not recognize Plaintiff's combination of impairments and give them due consideration. However this argument is fatally underdeveloped and is therefore waived. *See McPherson v. Kelsey*, 125

20

F.3d 989, 995 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived."); *Bracey v. Comm'r of Soc. Sec.*, No. 10-12659, 2011 WL 3359678, at *6 (E.D. Mich. July 13, 2011) ("Any issue not raised directly by plaintiff is deemed waived."), *report and recommendation adopted by*, 2011 WL 3359924 (Aug. 4, 2011).

### 3.   Weight Assigned to Plaintiff's Physicians

Plaintiff next argues that the ALJ erred by failing to assign controlling weight to the opinion of Dr. Nasser. (Doc. 11, at 11.) Specifically, Plaintiff argues that the ALJ failed to consider the following statements contained in the reports generated by Dr. Nasser: (1) Plaintiff was diagnosed with diabetes mellitus because he had a random blood sugar level above 400 milligrams per deciliter (Tr. 316); (2) Plaintiff complained of fatigue and was worried about his diabetes (*Id.*); and (3) Plaintiff complained of low back pain and reported that Naproxen did not help his pain (Tr. 328.) (Doc. 11, at 12-13.)

As Defendant points out, medical opinions are statements that "reflect judgments about the nature and severity of [a plaintiff's] impairment(s);" thus none of the statements identified by Plaintiff are medical opinions under 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). With regard to the first statement, it is well recognized that "the mere diagnosis of [a condition], of course, says nothing about the severity of that condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1998). The remaining statements are not medical statements because they are simply notations of complaints made by Plaintiff. *See Francis v. Comm'r SSA*, 414 Fed App'x 802, 804 (6th Cir. 2011) ("Dr. Killefer's pain-related statement, on the other hand, is not a 'medical opinion' at all—it merely regurgitates Francis's self-described symptoms."). Additionally,

21

Plaintiff's argument fails because the ALJ specifically referenced each of these statements in his opinion. (Tr. 38 ("In January 2013, [Plaintiff] reported to Dr. Nasser that his back pain persisted and that Naproxyn did not help. . . . Later that month, Dr. Nasser . . . diagnosed diabetes as the claimant's glucose level was over 400mg/dL. . . . [Plaintiff] complained of fatigue and reported that he was anxious and worried about the diabetes.").)

Next, Plaintiff argues that the ALJ never provided specific reasons for rejecting Dr. Nasser's September 2012 opinion as required by SSR 96-8p. (Doc. 11, at 13.) Plaintiff states that "Dr. Nasser is a physical medicine rehabilitation physician and his opinion is consistent over time and considering the length of treatment. Therefore, Dr. Nasser length [sic] of treatment relationship with the client and the frequency of exams which is approximately every month to every other month supports his opinion concerning Plaintiff's ability to work." (*Id.*). However, this argument, once again mischaracterizes the decision. After a lengthy, in-depth analysis of the medical records, the ALJ assigned little weight to the opinion of Dr. Nasser because it was inconsistent with Dr. Nasser's own treatment records:

> Dr. Nasser's office visit notes contain some abnormal findings, e.g., mixed straight leg raise findings, lumbosacral tenderness and decreased range of motion, that demonstrate that the claimant had functional limitations. . . . However, Dr. Nasser's notes do not show findings of decreased muscle strength, atrophy, ongoing antalgia, decreased lower extremity sensation, or impaired reflexes, to support restricting the claimant to sedentary work. Rather, Dr. Nassser's findings and the absence of abnormal motor and sensory findings support restricting the claimant to light work as described in the residual functional capacity.

(Tr. 42.) Since Plaintiff has not raised any argument concerning the adequacy of the ALJ's reasons for assigning little weight to Dr. Nasser's opinion, I find that the ALJ did not err on this ground.

22

In relation to his argument regarding the weight assigned to Dr. Nasser's opinion, Plaintiff asserts that the ALJ never obtained a consultative examination or an opinion from a medical expert, but rather "'succumb[ed] to the temptation to play doctor and [made his] own independent medical findings.'" (Doc. 11, at 13 (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).) However, the ALJ did obtain a consultative examiner, Dr. Shelby-Lane, (Tr. 333-50) and also examined a medical expert, Dr. Houser, during the administrative hearing. (Tr. 72-80.) Thus, this argument is meritless.

Additionally, Plaintiff makes inconsistent assertions throughout his brief regarding the consultative examination. First, he states that "deference must be given to a Consultative Examiner." (Doc. 11, at 10.) Later, Plaintiff states that the ALJ erred by relying on "the State Agency Consultative Examiner who stated the Plaintiff could perform light work" because Plaintiff "never conferred personally with this Examiner and as such, his opinion should be given no weight." (Doc. 11, at 12.) It is unclear here whether Plaintiff is referring to Dr. Shelby-Lane or Dr. Houser thus argument is fatally underdeveloped and therefore waived. Moreover both assertions are clearly unsupported by existing law. *See, e.g.*, 20 C.F.R. §§ 404.1527(b)-(c), (e); 416.927(b)-(c), (e) (discussing how medical opinions are weighed); *Madden v. Comm'r of Soc. Sec.*, 184 F. Supp. 2d 700, 706 (S.D. Ohio 2001) (noting that consultative examiners are not entitled to "any special degree of deference"); *Brooks v. Comm'r of Soc. Sec.*, 531 Fed. App'x 636, 642 (6th Cir. 2013) ("'[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.'" (citing SSR 96-6p, 1996 SSR LEXIS3 at *7, 1996 WL 374180, at *3)).

23

#### 4.      Plaintiff's Credibility

Plaintiff alleges that the ALJ erred by making a conclusory determination that Plaintiff's testimony was not credible and failing to provide specific reasons in violation of SSR 96-7p and 20 C.F.R. §§ 404.1529, 416.929. (Doc. 11, at 14-16.) Specifically, Plaintiff states, "Nowhere in the decision did the ALJ outline why Plaintiff's testimony concerning his chronic back pain and problems with concentration and socialization are not consistent with the multiple physical examinations finding exactly that." (*Id.* at 15.) Plaintiff further argues that the ALJ failed to address the record as a whole and that the medical record and Plaintiff's testimony support a finding that she is disabled under the Act. (*Id.* at 15-17.)

Plaintiffs "challenging the ALJ's credibility findings face an uphill battle." *Daniels v. Comm'r of Soc. Sec.* 152 Fed. App'x 485, 488 (6th Cir. 2005). The Sixth Circuit has held that "upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). Analysis "is limited to assessing whether the 'ALJ's explanations for . . . discrediting [Plaintiff] are reasonable and supported by substantial evidence in the record." *Id.* at 488-89.

Contrary to Plaintiff's assertion the ALJ provided a lengthy, detailed explanation for his finding that Plaintiff's testimony was not entirely credible. (*See* Tr. 41.) The ALJ specifically addressed Plaintiff's conservative treatment history, side effects from medication, activities of daily living, and prior work history in assessing Plaintiff's credibility. (*Id.*) Plaintiff's assertions that the ALJ did not address his testimony about back pain or his problems with

concentration and socialization are vague and unsupported by any citation to the record. In fact, the ALJ specifically addressed both of these alleged impairments throughout his decision. (Tr. 38 (addressing alleged depression); Tr. 36-43 (addressing alleged pain).) Moreover, the ALJ repeatedly stated that he considered all the evidence in the entire record, (Tr. 32, 34, 36, 37, 41) and Plaintiff has failed to point to any specific testimony or medical evidence that the ALJ failed to consider.

Finally, Plaintiff briefly argues that the ALJ erred by ignoring the VE's testimony that Plaintiff would be precluded from working if he had to be absent twice a month and take breaks throughout the day. (Doc. 11, at 17-18.) However, this question asserts limitations beyond those found in the RFC. Since those limitations were not accepted as credible by the ALJ she was not required to discuss the VE's testimony concerning those limitations. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a [VE] and is required to incorporate only those limitations accepted as credible by the finder of fact.").

## H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Al-Jalham's Motion for Summary Judgment (Doc. 11) be **DENIED**, the Commissioner's Motion (Doc. 14) be **GRANTED**, and that this case be **AFFIRMED**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may

respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987.) Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 22, 2016                               S/ Patricia T. Morris
                                                   Patricia T. Morris
                                                   United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.


Date: June 22, 2016            By s/Kristen Krawczyk
                                  Case Manager